**371 P.2d 855**

**SAN JUAN COUNTY, a body corporate and politic of the State of Utah, Plaintiff, Respondent and Cross-Appellant,**

**v.**

**GRAND COUNTY, a body corporate and politic of the State of Utah, Defendant and Appellant.**

**No. 9563.**

Supreme Court of Utah.

May 28, 1962.

---

Harry E. Snow, Grand County Atty., Robert H. Ruggeri, Moab, for appellant.

F. Bennion Redd, San Juan County Atty., Monticello, McKay & Burton, Paul E. Reimann, Salt Lake City, for respondent and cross-appellant.

CALLISTER, Justice.

This case involves a boundary dispute between the counties of Grand and San Juan. The latter commenced the action seeking to enjoin Grand from exercising jurisdiction over the disputed area and to recover taxes admittedly collected in that area by Grand County. A counterclaim was filed by Grand wherein it asserted its rights to the disputed area. After both sides had presented their cases, the trial court, having sat without a jury, dismissed both the complaint and counterclaim upon the ground that it lacked jurisdiction because the provisions of Section 17–1–33, U.C.A.1953[1] had not been complied with. San Juan appeals and Grand cross-appeals from this ruling.

The common boundary of the two counties runs from the Colorado border on the east to the middle of the Green River on the west. Ever since the establishment of San Juan County in 1880[2] and Grand County in 1890[3] the south boundary of Grand and the north boundary of San Juan have been legislatively placed at Parallel 38° 30′ North Latitude. The difficulty has been locating this line upon the surface of the earth.

Upon its appeal San Juan contends that the true and correct boundary is Parallel 38° 30′ North and that the lower court should have so decreed. Grand County, in its cross-appeal contends that the boundary was intended by the legislature to coincide with the south line of Township 21 S, R 17 to 26 E, S.L. Base and Meridian. It further contends that a survey conducted in 1912 and the subsequent acquiescence by San Juan in the result of that survey created the permanent boundary between the two counties.

■■ Considering first the argument of Grand County that the legislature intended

---

1. "Whenever any dispute or uncertainty shall arise as to any county boundary the same may be determined by the county surveyors of the counties interested, and in case they fail to agree or otherwise fail to establish the boundary, the board of county commissioners of either or both counties interested shall engage the services of the state engineer, who with aforesaid county surveyors, or either of them, if but one appears for that purpose, all having received due and proper notice, shall proceed forthwith to permanently determine such boundary line by making the necessary surveys and erecting suitable monuments to designate the boundaries, which shall be deemed permanent until superseded by legislative enactment. Nothing in this section shall be construed to give the surveyors or state engineer any further authority than to erect suitable monuments to designate boundaries as they are now established by law."

2. Laws of Utah 1880, Ch. IX, presently 17–1–22, U.C.A.1953.

3. Laws of Utah 1890, Ch. LX, presently 17–1–13, U.C.A.1953.

the common boundary to coincide with the township line, we find this to be without merit. The determination of county boundary lines rests with the legislature[4] and in the instant case the legislative acts defining the boundary are clear and unambiguous. Under such circumstances this court will not search for a meaning beyond the statutes themselves.[5] These statutes plainly designate the common boundary as being Parallel 38° 30′ North. Had the legislature intended the township line to be the boundary, it would have been a simple matter to so provide in the statutes.

■ With respect to the survey of 1912, Grand County produced evidence that such a survey was conducted by the surveyors of the two counties and contends that this was in compliance with 17–1–33, U.C.A. 1953, and that a permanent boundary was thus established. The lower court found that, "There is evidence in the record that in the year 1912, the county surveyors of the Plaintiff and Defendant counties surveyed the common boundary between the two counties and there is evidence of monument and other markings being made, but the exact location thereof cannot now be determined." and therefore declined to find this issue in favor of Grand County. The

record supports this finding of the lower court.

■ Lastly, Grand County contends that San Juan is prevented from asserting any boundary other than the one coincidental with the township line because of long acquiescence and laches. This contention is untenable because the statutes defining the common boundary are clear and unambiguous. As stated in 20 C.J.S. Counties § 22:

> " * * * Acquiescence can be considered only where there is uncertainty because of a conflict in the calls, monuments, or descriptions employed in the statute fixing the line  *  *  *.  A county's boundary line, however, as fixed by statute, if determinable, cannot be changed by laches or acquiescence; and acquiescence, in another line, is immaterial where the true boundary line can be determined as a question of law.  *  *  * "[6]

■ For the reason that there has been no substantial compliance with 17–1–33, U.C.A.1953 the trial court was correct in dismissing San Juan County's complaint and Grand County's counterclaim. But, in so doing, he should have declared that as a matter of law, the common boundary

4.  Barton v. Sanpete County, 49 Utah 188, 162 P. 611.

5.  In re Stevens' Estate, 102 Utah 255, 130 P.2d 85.

6.  See also: Board of Com'rs. of Ouray County v. Board of Com'rs., 58 Colo. 67, 143 P. 841.

of the two counties is Parallel 38° 30′ North Latitude. It remains for the counties to follow the statutory procedure in locating this boundary upon the face of the earth.

Affirmed as modified. No costs awarded.

WADE, C. J., and HENRIOD, McDONOUGH and CROCKETT, JJ., concur.